# In the United States Court of Federal Claims

No. 11-551C
Filed: September 1, 2011

* * * * * * *

BJ TRUCKING CO., INC., d/b/a
MAIL TRANSPORT SERVICES,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant,

v.

BEAM BROS. TRUCKING, INC.,

    Intervenor Defendant.

* * * * * * *

Temporary Restraining Order;
Standards for Issuing a TRO;
Reverse Auction; United States
Postal Service

**ORDER AND OPINION**

    We granted plaintiff's motion for a temporary restraining order during a hearing on August 31. Plaintiff raised significant legal questions regarding whether the Postal Service abused its discretion in conducting the reverse auction bid. Plaintiff would have been harmed irreparably absent the temporary restraining order because transition to the new contract was scheduled to begin last night. Plaintiff may have been deprived of a fair opportunity to compete for the contract in the circumstances as they stood yesterday. The balance of harms and public interest weigh in plaintiff's favor, where the Postal Service can maintain the status quo with the routes in question until resolution of this dispute. This temporary restraining order is effective until further notice. A hearing will be scheduled for a time during the next two weeks when the parties can meet with the court in Washington, D.C.

**BACKGROUND**

Plaintiff protests a Postal Service contract award to Beam Bros. for highway mail transportation services. Beam is the intervenor in this case. Plaintiff BJ Trucking[1] and Intervenor Beam currently serve the routes in dispute. The Postal Service hoped to consolidate the routes as a cost-saving measure; it limited competition for the new consolidated route to MTS and Beam.[2]

The Postal Service conducted the reverse auction competition for this contract via an electronic on-line bidding system. The system belongs to an outside vendor, Emptoris. A reverse auction competition requires each offeror to submit its bid via the Emptoris system, which shows each bid on a screen. The offerors' bidding screens would show the last bid, the rank of the bids, and the amount of the then-leading bid. Bidding rules required that new bids be submitted in decrements of no less than $250.[3]

The reverse auction began on July 28 and closed at 3:00 p.m. EDT on August 3. The auction was subject to a two-minute extension or grace period, whereby bidding would remain open for a two-minute period after any new leading bid filed just prior to the deadline.[4] Bidding would remain open until no new lower bids were entered in a final two-minute period.

Plaintiff alleges that an error occurred in the bidding system during the auction, whereby its screen did not show that a lower bid had been entered by Beam Bros. For that reason, plaintiff's bidding team believed that they had entered the winning bid at the close of the auction. The team visited the "closed bids" page of the Emptoris web site at the close of bidding and discovered that the site had registered another, lower Beam bid before the close. MTS called the Postal Service's contracting officer immediately and explained its position. The contracting officer, Mr. Lott, said that he would look into the matter, and he would consider plaintiff's request that he reopen the reverse auction bidding.

According to plaintiff, the auction price at the close of bidding was not a reasonable competitive price, as it was much higher than each of the incumbent contracts being replaced. Moreover, both sides were entering bids in $100,000 decrements, rather than the permitted $250, which to plaintiff meant that the contractors "had not really gotten going."

---

[1] BJ Trucking is doing business as MTS, which is a designation used sometimes herein for plaintiff.

[2] Factual assertions in this Opinion are derived from the Complaint, plaintiff's court filings, and intervenor's opposition.

[3] In this competition for government services, the lower bid would win the contract.

[4] This provision addresses the possibility that one might "game the system" by filing last-minute bids. No grace period was invoked in the auction at issue in this case.

The Postal Service ordered an inquiry of Emptoris regarding the performance of the computer program during the auction. Emptoris reported on August 18 that "the application worked as per design and there were no anomalies observed." The Postal Service apparently effected a verbal award to Beam Bros. after receipt of this report, but did not inform plaintiff its decision.

The contracting officer's supervisor called plaintiff MTS on August 23, offering to hear plaintiff's side of the story. The supervisor advised plaintiff that she would make a decision in the next day or so, possibly already having made the decision. She called back on August 26 to inform plaintiff that the award had already been made to Beam Bros. MTS asked her to stay performance of the challenged contract, but she rejected that request.

Whether Beam has a written contract with the Government even now, remains unclear. That point was difficult to establish at the hearing yesterday as well, but apparently Beam did not have a written contract then. Intervenor's counsel insisted that an oral contract was in place, and that a written contract would be only a formality at this juncture.

**DISCUSSION**

Injunctive relief is an extraordinary remedy and should be awarded "in a way which best limits judicial interference in contract procurement." *Parcel 49C Ltd. P'ship v. United States*, 31 F.3d 1147, 1153 (Fed. Cir. 1994) (quoting *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1372 (Fed. Cir. 1983)). We grant temporary injunctive relief when (1) the plaintiff is likely to succeed on the merits of the case; (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) the balance of hardships to the parties favors the grant of injunctive relief; and (4) granting injunctive relief is in the public interest. *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004). No one factor is dispositive. *Gentax Corp. v. United States*, 58 Fed. Cl. 634, 654 (2003).

Likelihood of Success on the Merits

A reviewing court does not disturb an agency award unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see* 28 U.S.C. § 1491(b)(4). A protester must show by a preponderance of the evidence that the agency's actions were without a reasonable basis or in violation of applicable procurement law. *Information Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001). The protester may show, in the alternative, a significant error in the procurement process and that the error was prejudicial to the protester. *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996).

MTS alleges that the Postal Service abused its discretion in awarding the contract to Beam Bros. based upon a bidding event in which computer or electronic glitches prevented plaintiff from observing the lowest, and ultimately winning, bid. Plaintiff frames the legal issues as follows: whether the Postal Service violated the Request for Proposals in refusing to restart competitive reverse auction bidding after a computer or the system failed during the first auction; whether the Postal Service had a rational basis to conclude there was no system error; and whether the Postal

3

Service abused its discretion in negotiating a lower price with Beam Bros. after bids closed. These negotiations were conducted on an exclusive basis.

In proffering these arguments, plaintiff has shown a reasonable likelihood that it could succeed on the merits, given the facts alleged. We anticipate further explanation of various legal issues raised at the hearing yesterday; counsel will have an opportunity to address these issues fully at the next hearing.

### Irreparable Injury

The question whether plaintiff would have an adequate remedy in the absence of an injunction is the key to this standard. *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993). Loss of potential profits stemming from a lost opportunity, which could not otherwise be recovered from the Government, can be sufficient to constitute irreparable harm. *See Cardinal Maint. Serv., Inc. v. United States*, 63 Fed. Cl. 98, 110 (2004). The Government did not argue this point, and comments made by other counsel were tangential, if any. We do not recall the issue being raised, but this will be one of the important legal matters to be discussed at the hearing next week.

MTS described its potential injuries in part as loss of revenues that constitute a significant percentage of its overall income. Loss of these revenues would impact the revenue base over which plaintiff's fixed operating costs are allocated. Transition to the new contract would idle a substantial number of tractors and trailers currently operating on the routes in question. Plaintiff claims that it would lay off large numbers of employees, with no assurance that the drivers would be rehired. Plaintiff states that the aggregate effect of these harms could threaten its ability to continue in business.

### Balance of Harms

A court must consider the harm that injunctive relief would impose on the Government and the intervening party. *See Sheridan Corp. v. United States*, 94 Fed. Cl. 663, 670 (2010). Defendant has been operating the route at issue pursuant to contracts with MTS and Beam Bros. For the time being, no impediment appears to affect continuation of the routes by the Postal Service under the existing contracts. No one provided information about costs or other problems for the Government in preserving the status quo.

Beam Bros. urged the court to consider substantial damages that it will suffer from a grant of the temporary restraining order. For the most part, these are damages resulting from its having prepared to perform the new contract by procuring additional vehicles, hiring and assigning drivers, and conducting other start-up activities. The intervenor describes costs that already have exceeded $1 million. The intervenor emphasizes the impact on seventeen drivers who it asserted will be out of work as of today. Some of these newly-hired drivers were already on the move in preparation for performance of the new contract.

We do consider and we have considered the difficult problems that actions of this nature have on businesses and their employees. Beam's counsel was especially effective in his descriptions of the hardships that would result. We have no effective response to this problem. However, intervenor might consider the possibility that these employees could be harmed by our decision not to issue a stay of limited duration, which would not resolve the case. The case likely will be decided on the merits eventually, and future disruption to the contract could be even more damaging to the employees and to the company, and in comparison, the harm to plaintiff would be greater. This contract has been in dispute for at least a month, and Beam may not have a writing evidencing the new contract. Any preparations that intervenor would make or has made for performance would be conducted with knowledge that the contract was in dispute.

Plaintiff's loss of this contract, currently seventy percent of the route in dispute, equates to losing thirty percent of MTS's business, according to plaintiff. We sympathize with Beam's concerns for its employees, but the allegations we have so far establish that plaintiff's potential harm would be greater by far than any harm to the other parties.

Public Interest

The public interest standard typically calls for a description of the public's right and expectation that our Government will conduct procurement proceedings with taxpayer funds fairly and honestly so that no bidder is prejudiced – a fair and open procurement system. Thus, "there is an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement statutes and regulations." *CW Gov't Travel, Inc. v. United States*, 61 Fed. Cl. 559, 576 (2004). This standard or consideration also falls to plaintiff, given the facts alleged in this case to date.

**CONCLUSION**

We make no attempt to minimize the effects that this action has had and will have on the intervenor. The economy is challenging for the trucking businesses, and even a temporary stay will be difficult. Unfortunately, similar effects are described in most cases of this nature where small businesses are involved. The only assistance that a court can provide at this point is to be available to the parties for early hearings designed to resolve legal and factual issues promptly. This court is available for a hearing on pending matters literally at any time. Meanwhile the United States Postal Service is hereby temporarily restrained and enjoined from permitting performance of Contract HCR 274Y1 until further notice. Defendant may not take any action in furtherance of that contract, including administrative actions, without first contacting the court and notifying plaintiff that such permission is being sought.

IT IS SO ORDERED, this first day of September, 2011.

s/Robert H. Hodges, Jr.
Robert H. Hodges, Jr.
Judge